S08G1055. GEORGIA DEPARTMENT OF TRANSPORTATION
v. HELLER et al.
S08G1056. CITY OF ATLANTA v. HELLER et al.
S08G1198. HELLER v. CITY OF ATLANTA et al.
(674 SE2d 914)

MELTON, Justice.

The facts underlying these consolidated cases show that Ed Heller's wife, Patricia, was killed when the taxi in which she was riding spun out of control on a rain-slick interstate highway and hit a tree. Heller, individually and as administrator of his wife's estate (hereinafter collectively "Heller"), filed suit against the taxicab driver and the cab company that the driver worked for.[1] Heller also sued several governmental entities: the Georgia Department of Transportation ("DOT"), which maintained the roadway; Greg Shepard, a City of Atlanta Vehicle for Hire inspector, based on the fact that one day before the accident Shepard had given the taxi a passing grade even though its tires had little or no tread; and the City of Atlanta, based on the allegation that Shepard's practice of not properly inspecting the tires was known to department supervisors and constituted a nuisance. The trial court granted summary judgment to the governmental defendants, and the Court of Appeals affirmed in part and reversed in part, holding that, although the trial court correctly concluded that the City was entitled to summary judgment on Heller's nuisance claim, the trial court erred in con-

---

[1] Neither the driver nor the cab company are parties to this appeal.

cluding that the DOT was entitled to sovereign immunity and that Shepard was entitled to official immunity from Heller's claims. See generally *Heller v. City of Atlanta*, 290 Ga. App. 345 (659 SE2d 617) (2008). We granted certiorari in these consolidated cases to determine (1) whether the Court of Appeals erred in its finding that the DOT was not entitled to sovereign immunity (Case No. S08G1055), (2) whether the Court of Appeals erred in its determination that Shepard was not entitled to official immunity (Case No. S08G1056), and (3) whether the Court of Appeals erred in its determination that the trial court properly granted summary judgment in favor of the City on Heller's nuisance claim. For the reasons that follow, we affirm in all three cases.

### Case No. S08G1055

1. Under the Georgia Constitution, "[t]he General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act . . . [or by enacting a statute] which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) and (e). See also *Gilbert v. Richardson*, 264 Ga. 744 (3) (452 SE2d 476) (1994). Pursuant to this constitutional authority, the Legislature enacted the Georgia Tort Claims Act, which states in relevant part that

> [t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

OCGA § 50-21-23 (a). In this regard,

> [t]he state shall have no liability for losses resulting from . . . [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety . . . [and the state shall have no liability for losses resulting from] [l]icensing powers or functions, including, but not limited to, the issuance,

denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization.

OCGA § 50-21-24 (8), (9). See also *Youngblood v. Gwinnett Rockdale Newton Community Service Bd.*, 273 Ga. 715 (3) (545 SE2d 875) (2001) (pursuant to OCGA § 50-21-24 (7), State not liable for loss resulting from assault and battery by third party).

Here, the DOT claims that it cannot be subjected to liability because Mrs. Heller's death resulted, at least in part, from either Shepard's inadequate inspection of the taxicab's tires or Shepard's failure to issue a "Do Not Operate" citation for the taxi, which would have suspended the taxi's operating permit and kept it off of the roads. See OCGA § 50-21-24 (8), (9) (inspection and permitting exceptions to the State's waiver of sovereign immunity). However, assuming without deciding that the inspection and permitting exceptions to the State's waiver of sovereign immunity apply to non-State actors, these exceptions were not the only provisions of the Tort Claims Act that were at issue in this case. The Act also provides that

[t]he state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works *where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards* in effect at the time of preparation of the plan or design.

(Emphasis supplied.) OCGA § 50-21-24 (10) (the design standards exception). In this connection, this Court has made clear that where evidence is presented that

some of DOT's actions and failures to act with regard to [an area covered by the design standards exception] violated generally accepted engineering standards . . . [an issue of fact exists] on the question of whether DOT violated generally accepted engineering standards, thus removing it from the protection of the design standards exception [of the Tort Claims Act].

*Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (2) (471 SE2d 849) (1996).

Here, after Shepard's inspection and failure to issue a "Do Not Operate" citation had already taken place, the crash itself occurred when the taxi in which Mrs. Heller was riding careened into a tree

that the DOT may have allowed to remain too close to the edge of the highway where the accident took place. Heller presented expert testimony specifically showing that the DOT may have failed to maintain a proper clear zone for trees located near the edge of the highway, in possible violation of generally accepted engineering standards for the highway and standards set by the DOT itself. Where, as here,

> the record contains expert testimony that some of DOT's actions and failures to act with regard to the [highway] involved in this case violated generally accepted engineering standards[,] . . . [w]e agree with the Court of Appeals that [an issue of fact exists] on the question of whether DOT violated generally accepted engineering standards, thus removing it from the protection of the design standards exception.

*Brown*, supra, 267 Ga. at 8 (2).

Thus, prior to the accident, allegedly negligent inspection and permitting functions occurred.[2] See OCGA § 50-21-24 (8), (9). This was followed by a second event, the accident resulting in the loss due to the State's alleged improper design of the roadway. See OCGA § 50-21-24 (10); *Brown*, supra, 267 Ga. at 6 (victim killed in car accident upon entering poorly designed intersection and being struck by a dump truck). Because this second event leading to the loss does not fall within any exception to the State's waiver of sovereign immunity, we hold that the State has waived its sovereign immunity in connection with the car accident that led to Mrs. Heller's death. See id.; OCGA § 50-21-24 (10).

The Court of Appeals' decision in *Dept. of Human Resources v. Coley*, 247 Ga. App. 392 (544 SE2d 165) (2000), does not change the result. In *Coley*, the Department of Human Resources placed the victim in a hospital where the victim was later strangled to death by another patient. This second event, the attack by this third party patient, which caused the plaintiff's loss, was the assault and battery for which the State was expressly protected by sovereign immunity. Therefore, the State was immune from suit. Id. at 394 (1). In the instant case, however, there is no express exception to the waiver that would provide immunity to the State for the second event that allegedly caused the plaintiff's loss.

Although *Coley* did not involve other factors relating to the

---

[2] Again, we assume without deciding that the inspection and permitting exceptions would operate to shield the State from liability where the exceptions were triggered by the actions of Shepard, a non-State actor.

State's waiver of sovereign immunity besides the assault and battery exception, the Court of Appeals went on to state:

> It is true that there may be more than one proximate cause of a plaintiff's loss. Regardless of the number of proximate causes, however, the plaintiff sustains only one "loss." This loss cannot be apportioned among the various proximate causes, with part of the loss attributed to one event and another part attributed to a different event.

Id. at 397 (2). The DOT argues that this language compels the result that, as long as any one of the causes connected to a plaintiff's loss is a cause for which the State would be immune from suit, the State would always be immune from any suit stemming from such loss. However, this is not the case. The situation presented in *Coley* is distinguishable from the instant case. As an initial matter, *Coley* has nothing to do with competing sections of the Tort Claims Act. Furthermore, as explained above, the latter event in *Coley* that led to the plaintiff's loss was an event for which the State was entitled to sovereign immunity (see OCGA § 50-21-24 (7)), whereas, here, the opposite is true. The latter event that led to the loss, the allegedly poorly designed roadway, was something for which the State was not entitled to the protection of sovereign immunity. See OCGA § 50-21-24 (10). Despite the factual differences between these two cases, however, in the end, both *Coley* and this Court's decision in the instant case are consistent with the Tort Claims Act's requirement that, where the State *has* waived its sovereign immunity for torts that it has committed, it "shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances." OCGA § 50-21-23 (a). To the extent that the language from *Coley* cited above could be read to reach an outcome different from the one reached in this opinion, it is hereby disapproved.

### Case No. S08G1056

2. Shepard contends that, because his actions in inspecting the taxicab involved in the accident were discretionary, Heller's claims against him are barred by the doctrine of official immunity.

> [A] suit against a public official in his or her individual capacity is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the

actual intent to cause injury. *Gilbert*[, supra, 264 Ga. at 752 (6)]; Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

*Brown v. Penland Constr. Co.*, 281 Ga. 625, 625-626 (641 SE2d 522) (2007). However, the Georgia Constitution "provides no immunity for ministerial acts negligently performed." *Gilbert*, supra, 264 Ga. at 753 (6).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005).

Here, the record reveals that Shepard's responsibilities were ministerial in nature. For one thing, before inspecting a taxicab, a Vehicle for Hire inspector must receive proof that a prior inspection of the taxicab by the taxi company at issue had already taken place. City of Atlanta Code of Ordinances § 162-34 (c) (2) ("All taxicabs shall be inspected on a semiannual basis by companies which shall place on their affiliated vehicles a sticker approved by the bureau which shall serve as proof of such inspection") and (d) ("All vehicles for hire passing semiannual inspection shall have affixed to the lower right rear windshield an inspection sticker issued by the bureau showing the vehicle's [Certificate of Public Necessity and Convenience] number and the date of the inspection"). A Vehicle for Hire inspector is not authorized to proceed with an independent inspection of a taxicab until such time as he or she has received proof that the taxicab company involved has conducted its own required semiannual inspection. In the instant case, the taxicab company did not provide proof to Shepard that it had conducted its required semiannual inspection. Despite the company's failure to provide this required proof, however, Shepard conducted an unauthorized independent inspection of the taxicab that ultimately cleared it for use on the roads. Furthermore, with respect to the independent inspection itself, Shepard did nothing to verify whether or not the taxi's badly worn tires had the legally required minimum amount of 2/32 inch of tread on them. OCGA § 40-8-74 (e) (1). Shepard had no "discretion" to ignore whether the tires met this minimum legal requirement and allow a taxi with inadequate tread on its tires to be cleared for use on the roads. Because evidence exists that Shepard conducted an unauthorized and inadequate inspection that allowed the taxi in

question to be cleared for operation, and because Shepard's actions in this regard violated ministerial duties, we hold that the Court of Appeals correctly concluded that Shepard was not shielded from potential liability by the doctrine of official immunity.

### Case No. S08G1198

3. Heller asserts that the Court of Appeals erred in concluding that the trial court properly granted summary judgment to the City on his nuisance claim. Specifically, Heller contends that Shepard's alleged practice of failing to properly inspect taxicabs was known to department supervisors, which provided Heller with an actionable nuisance claim against the City.

"A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." OCGA § 41-1-1. In order for a municipality to be held liable for creating or maintaining a nuisance, however:

> the defect or degree of misfeasance must exceed mere negligence (as distinguished from a single act); the act complained of must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and there must be a failure of municipal action within a reasonable time *after knowledge of the defect or dangerous condition.*

(Footnote omitted; emphasis supplied.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996); *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979). Here, there is no evidence that the City was on notice of dangerous taxicabs being routinely cleared for service based on inadequate inspections, let alone evidence that the City failed to take appropriate action to remedy any such problem. Indeed, the isolated incident involving Shepard's inspection of the extremely worn tires of the taxicab involved in Mrs. Heller's accident would not give rise to a nuisance claim against the City. See *Hibbs*, supra (single act insufficient to give rise to nuisance claim against municipality). The Court of Appeals properly concluded that the City was entitled to summary judgment on this claim.

*Judgment affirmed. All the Justices concur, except Benham and Hines, JJ., who concur in part and dissent in part.*

BENHAM, Justice, concurring in part and dissenting in part.

I concur in the majority's opinion, except as to Division 2. I

respectfully dissent from Division 2 of the majority's opinion because I believe Mr. Shepard is entitled to official immunity. When a municipal officer has discretion to complete the tasks given him and he acts within the scope of his authority, then he is entitled to official immunity. *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990). In *Peele v. Dobbs*, a case analogous to the one at bar, a county building inspector was sued for allegedly conducting a negligent inspection of the construction of a chimney which later caught fire. Because the inspector was acting in his official capacity and he was entrusted with exercising his "sound judgment," his inspection duties were discretionary and he was entitled to official immunity, absent any showing of actual malice. Id. See also *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141 (5) (524 SE2d 790) (1999) (trial court erred when it withheld official immunity from municipal housing inspector who was acting within his authority, had used his judgment in conducting the inspection, and was not guilty of any malice); *Stone v. Taylor*, 233 Ga. App. 886 (2) (506 SE2d 161) (1998) (inspection of county roads for safety conditions and need for warning signs was a discretionary activity and so county employees were entitled to official immunity). Indeed, the Court of Appeals has unequivocally held that "the acts of inspection, or failure to properly inspect, . . . are discretionary. . . ." *Kodares v. Gwinnett County*, 220 Ga. App. 848, 851 (470 SE2d 479) (1996) (county employees who allegedly failed to properly inspect bridge were entitled to official immunity).

Here, Mr. Shepard was acting in his official capacity to inspect taxi cabs for safety. Id. While OCGA § 40-8-74[3] sets forth certain guidelines regarding tire tread, there is evidence that Mr. Shepard was not authorized to enforce that statute. In addition, neither OCGA § 40-8-74 nor Atlanta City Code § 162-34 (c) (2) (a)[4] sets forth the methodology by which Shepard was to determine the proper tire tread. The facts show that rather than using a measuring instrument, Shepard *relied on his training* as an inspector and evaluated the taxi's tires by visual examination. While this may have been illustrative of poor judgment, negligence, and/or poor procedure, it was within Mr. Shepard's discretion to inspect the tires in this manner in order to determine their proper functionality per Atlanta City Code § 162-34 (c) (2) (a), and so he was entitled to official immunity.[5] *Peele v. Dobbs*, supra, 196 Ga. App. at 684-685; *Woodard*

---

[3] OCGA § 40-8-74 (e) requires tires to have not less than a 2/32 inch tread.

[4] Atlanta City Code § 162-34 (c) (2) (a) required inspection of tires to "ascertain that each is functioning properly."

[5] I also disagree with the suggestion that Mr. Shepard could not inspect the taxi unless the cab company had first submitted proof of its own inspection. There is evidence that taxis were inspected more than semiannually due to deficiencies that required follow-up inspections

*v. Laurens County*, 265 Ga. 404 (2) (456 SE2d 581) (1995) (county employees had official immunity although they failed to follow official procedures to replace stop signs). Moreover, inspecting tires was only one aspect of the entire inspection which included checking the proper functioning of brakes, lights, exhaust systems, windows, etc. It would be severely overreaching for courts to determine the applicability of official immunity by picking and choosing which portions of an entire inspection are discretionary and which portions are not. Accordingly, I would reverse the judgment in Case No. S08G1056 and reinstate the trial court's grant of summary judgment to Mr. Shepard.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED MARCH 23, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Robert C. Edwards, Assistant Attorney General, for Department of Transportation.

James H. Potts II, Sidney L. Moore, Jr., Schenck & Associates, Hollis C. Cobb, for Heller.

Elizabeth B. Chandler, Jerry L. DeLoach, Laura Sauriol, for City of Atlanta.

Susan K. Moore, James F. Grubiak, amici curiae.

---

throughout the year. The taxi driver in this case was often cited for follow-up inspections. Furthermore, the trigger for inspection is only relevant if the municipal inspector *fails to inspect* when required to do so. See *Clive v. Gregory*, 280 Ga. App. 836 (635 SE2d 188) (2006). The case sub judice involves the alleged failure to *properly* inspect. See *Kodares v. Gwinnett County*, supra, 220 Ga. App. at 851.