294 Ga. 773
FINAL COPY

S13G1590. AUSTIN v. CLARK et al.

MELTON, Justice.

Donna Austin filed a complaint seeking recovery for personal injuries allegedly sustained when she fell on a sidewalk as she was leaving a graduation ceremony at Peach County High School. As is relevant here, she filed the suit against Susan Clark, the Superintendent of Peach County Schools; C.B. Mathis, the Assistant Superintendent of Facilities of Peach County Schools; Bruce Mackey, the Principal of Peach County High School; and Chad Sanders, the Director of Maintenance of Peach County Schools. Austin alleges in her complaint that she was on school district property when she stepped from a sidewalk into a roadway and her leg became lodged in an opening on the curb where water drains from the roadway. Austin alleges that the individual defendants negligently performed the ministerial duties of inspecting, maintaining and repairing the sidewalk and road where she fell.

Pursuant to OCGA § 9-11-12 (b) (6), the individual defendants filed a motion to dismiss the complaint, asserting that the claims against them were

barred by the doctrine of official immunity. The trial court granted the motion to dismiss, and the Court of Appeals affirmed. See Austin v. Clark, 322 Ga. App. 368 (745 SE2d 293) (2013).[1] Thereafter, we granted certiorari to determine whether the Court of Appeals erred in affirming the trial court's order granting the individual defendants' motion to dismiss based upon official immunity. For the reasons set forth below, we reverse.

As the parties and the Court of Appeals have pointed out, the pivotal determination in this case is whether the school officials' actions or inactions constitute the violation of a ministerial or discretionary duty.

> The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. See Hennessy v. Webb, 245 Ga. [329, 331 (264 SE2d 878) (1980)]; OCGA § 36–33–4; Sentell, Individual Liability in Georgia Local Government Law: The Haunting Hiatus of Hennessy, 40 Mercer L. Rev. 27 (1988).

(Punctuation omitted.) Gilbert v. Richardson, 264 Ga. 744, 752 (6) (452 SE2d

---

[1] Austin also filed suit against the Peach County School District. Like the individual defendants, the School District filed a motion to dismiss, which the trial court denied. The Court of Appeals ruled, however, that the trial court should have granted the School District's motion to dismiss because it was entitled to sovereign immunity. This ruling by the Court of Appeals was not appealed, and it plays no part in our analysis of the present case.

476) (1994).[2] Furthermore,

> [a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) Common Cause/Georgia v. City of Atlanta, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005).

The answer to this pivotal distinction between a discretionary and a ministerial duty is highly fact-specific, and, due to the current procedural posture of this case, cannot be definitively answered.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. . . . In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

Anderson v. Flake, 267 Ga. 498, 501(2) (480 SE2d 10) (1997). In other words,

---

[2] The doctrine of official immunity has now been incorporated into the state constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX.

3

[a] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Citation and punctuation omitted.) Bourn v. Herring, 225 Ga. 67, 70 (3) (166 SE2d 89) (1969).

As the individual defendants concede, discovery in this case has been extremely limited and the record, to date, contains no job descriptions for the individuals being sued. At this time, it cannot be said that the allegations of the complaint disclose with certainty that Austin would not be entitled to relief under *any* state of provable facts asserted in support. For example, there conceivably could be evidence of some explicit detailed laundry list of discrete tasks each individual defendant was required to perform on graduation night to ensure that all curbs and water drains around the school were in a safe condition. See, e.g., Ga. Dept. of Transp. v. Heller, 285 Ga. 262, 267 (2) (674 SE2d 914) (2009) (taxicab inspector's duty to inspect tires pursuant to a city ordinance was ministerial in nature). At this stage in the litigation, it does not matter that the existence of such a laundry list is unlikely. For the same reason, contrary to the

4

finding of the Court of Appeals, it does not matter that "Austin has pointed to no specific and clear procedures or methods for dealing with the purported hazard created by the drainage opening on the curb." This is factual evidence which may or may not be developed during discovery and can be considered on a subsequent motion for summary judgment. As the record stands, however, the trial court improperly granted the individual defendants' motion to dismiss, and the Court of Appeals erred by affirming the trial court.

Judgment reversed. All the Justices concur.

NAHMIAS, Justice, concurring.

I concur fully in the Court's opinion, because as the Court says, Austin's complaint alleging that her injuries were caused by the individual defendants' negligent performance of ministerial duties satisfies the minimal requirements of notice pleading as set forth in our case law, allowing this lawsuit to survive a motion to dismiss based on official immunity and to proceed into discovery. It is *conceivable*, as the Court explains, that the discovery process will identify government policies imposing clear, specific, and non-discretionary duties on

the defendants to inspect, maintain, and repair the sidewalk and road at Peach County High School where Austin was injured. But that seems very unlikely, particularly given the executive and managerial positions of the public officials whom Austin chose to sue — officials who typically have the discretion to establish policies for lower-level employees to implement ministerially, if such policies exist at all. As a result, this case is almost certain to end with summary judgment for the defendants based on official immunity, as occurred in all the cases cited by the Court of Appeals — if the case is litigated that far.

As the defendants point out, however, if this case proceeds to full discovery, including medical experts on the issue of Austin's damages, the litigation expenses would likely make it economically rational for the defendants to pay a significant sum to settle with Austin, notwithstanding their strong likelihood of ultimately prevailing in the case due to official immunity. The defendants urge this Court to apply the pleading rules more strictly in this context to avoid such an unjust result.

There appears to be a preferable approach, however, which avoids varying from our traditional notice pleading standard in cases like this. The trial court can exercise its broad discretion to enter protective orders governing discovery,

2

see OCGA § 9-11-26 (c),[3] to control the sequence and timing of discovery, see

OCGA § 9-11-26 (d),[4] and to establish pretrial procedure, see OCGA § 9-11-16

(a) (5),[5] to focus discovery initially on the issue of whether any applicable

ministerial duties existed. See generally Wayne M. Purdom, Ga. Civil

Discovery §§ 4.4 (discussing sequencing of discovery), 4.11 (discussing pretrial

and scheduling orders) (2013). If this initial and limited stage of discovery

produces the likely result — that no such ministerial duty exists — then the

defendants could move for summary judgment to end the case. If Austin does

find evidence of such a duty, more extensive and expensive discovery into the

---

[3] OCGA § 9-11-26 (c) says, in relevant part:
Upon motion by a party or by the person from whom discovery is sought and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
    (1) That the discovery not be had;
    (2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
    (3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; [or]
    (4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters . . . .

[4] OCGA § 9-11-26 (d) allows the trial court, on motion and "for the convenience of parties and witnesses and in the interests of justice," to alter the usual rules that "methods of discovery may be used in any sequence" and "the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery."

[5] OCGA § 9-11-16 (a) (5) provides that the trial court, on the motion of any party or on its own motion, shall direct the attorneys for the parties to appear before it for a pretrial conference to consider, along with other enumerated topics, "[s]uch other matters as may aid in the disposition of the action."

3

issues of breach of the duty, causation, and damages could proceed and would be warranted.

By carefully utilizing their authority to manage discovery and pretrial practice, trial courts should be able to "secure the just, speedy, and inexpensive determination" of this and similar cases involving official immunity. OCGA § 9-11-1. See Crawford-El v. Britton, 523 U.S. 574, 593 & n.14, 597-601 (118 SCt 1584, 140 LE2d 759) (1998) (discussing various ways in which trial judges should exercise their discretion to protect the substance of the qualified immunity defense in federal civil rights and "constitutional tort" cases by protecting public officials from unnecessary and burdensome discovery or trial proceedings, including by tailoring and sequencing discovery). If this approach proves insufficient to protect public funds and public officials from the costs and distractions of lawsuits that have no plausible merit, then the General Assembly may consider whether alteration of the traditional notice pleading standard for such cases would be appropriate. See id. at 595-597. Compare Ashcroft v. Iqbal, 556 U. S. 662, 680-683 (129 SCt 1937, 173 LE2d 868) (2009).

4

I am authorized to state that Justice Blackwell joins in this concurrence.

Decided March 10, 2014.

Certiorari to the Court of Appeals of Georgia – 322 Ga. App. 368.

Jerry A. Lumley, Childs & Noland, Frank H. Childs, Jr., for appellant.

Smith, Welch, Webb & White, A.J. Welch, Jr., John B. Garland,, Page, Scrantom, Sprouse, Tucker & Ford, David A. Siegel, Lindsay M. Hodgson, for appellees.