**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A1741, A13A1742. DIAMOND v. DEPARTMENT OF
   TRANSPORTATION (two cases).

MCFADDEN, Judge.

Christy and Jay Diamond each filed a negligence action against several defendants, including the Department of Transportation ("DOT"). The DOT filed a motion to dismiss and for summary judgment in each case, arguing that certain claims were barred by the doctrine of sovereign immunity and that it owed no duty to the plaintiffs. The trial court dismissed the Diamonds' claims of negligent inspection on sovereign immunity grounds and granted summary judgment to the DOT on the remaining claims, including the negligent failure to include adequate signs or other warning devices on the roadway and the negligent failure to construct the roadway

so as to diminish the appearance of its being a functioning roadway, due to lack of duty.

We have combined the Diamonds' appeals for purposes of this opinion. They argue that the DOT's waiver of immunity on their negligent design claims also waived immunity on their negligent inspection claims. But we find that a waiver of immunity on one claim does not amount to a waiver of immunity on all claims. The Diamonds also argue that whether the DOT owed them a duty to notify them that the roadway was no longer operable is a fact question. But whether a party owes another a duty is a legal question. And the Diamonds have pointed to no statutory or case law authority demonstrating that the DOT owed them a duty in the circumstances of this case. We therefore affirm.

The Diamonds were injured when their car plunged into a ditch. At the time of the accident, a road construction project was underway in the area. As part of the project, a county road, Lakeshore Drive, was rerouted. Mr. Diamond drove the car on what he thought was Lakeshore Drive but was actually a grassy area where the road formerly had existed but then had been removed. The Diamonds continued along for 90 to 100 feet on the grass and dirt surface before plunging into the ditch.

1. *Sovereign immunity.*

The Diamonds argue that the trial court erred in dismissing their negligent inspection claims because the DOT's waiver of immunity on the negligent design claims also waived immunity on the negligent inspection claims. We disagree.

The Georgia Constitution authorizes the legislature to waive the state's sovereign immunity. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) and (e). The Georgia Tort Claims Act, OCGA § 50-21-20 et seq., declares the public policy of this state to be "that the state shall only be liable in tort actions within the limitations" set out in the Act. OCGA § 50-21-21 (a). Consequently,

> [a]lthough the [Act] waives the state's sovereign immunity, OCGA § 50-21-23, that waiver is limited by certain specified exceptions and limitations, which are also set forth in the [Act]. Or, stated succinctly, the state is only liable in tort actions within the limitations of the [Act]. Further, any suit brought to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction. The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver, and the trial court's pre-trial ruling on factual issues necessary to decide the OCGA § 9-11-12 (b) (1) motion is reviewed on appeal under the any evidence rule.

*Hagan v. Ga. Dept. of Transp.*, 321 Ga. App. 472, 474-475 (1) (739 SE2d 123) (2013) (citations and punctuation omitted).

Under the Act, the state waives its sovereign immunity

> for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article. The state shall have no liability for losses resulting from conduct on the part of state officers or employees which was not within the scope of their official duties or employment.

OCGA § 50-21-23 (a). An exception to the state's waiver of sovereign immunity concerns losses resulting from inadequate or negligent inspections of non-state property. OCGA § 50-21-24 (8) provides that

> [t]he state shall have no liability for losses resulting from [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.

In accordance with the exception set out in this provision, the trial court granted the DOT's motion to dismiss the Diamonds' claims to the extent they were based on a theory of negligent inspection of the county-owned area in which the accident

4

occurred. The Diamonds argue that the trial court erred because the DOT's waiver of sovereign immunity on their negligent design claim, see OCGA § 50-21-24 (10) (waiving immunity for losses resulting from construction design that is not prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design), means that it also waived immunity on the negligent inspection claim.

The DOT argues that simply because it may have waived immunity on the design claim does not mean that it waived immunity on the inspection claim. We agree. We so held in *Reidling v. City of Gainesville*, 280 Ga. App. 698, 701-703 (1) (634 SE2d 862) (2006). In that case, the trial court granted summary judgment to the DOT on the plaintiffs' claims for both negligent design and negligent inspection. We reversed the grant of summary judgment on the negligent design claim but affirmed the grant of summary judgment on the negligent inspection claim. The plaintiffs had contended that the DOT's design plans for a road project did not comply with generally accepted engineering and design standards and that the DOT either negligently approved a disposal site for the excess fill soil from the construction site or negligently inspected the site. We held that whether the DOT's design plans complied with generally accepted engineering and design standards, thereby

5

supporting a wavier of sovereign immunity under OCGA § 50-21-24 (10), was a fact question. Id. But we expressly affirmed the grant of summary judgment to the DOT on the claim that the DOT either negligently approved the disposal site for the excess fill soil or negligently inspected the site, agreeing with the trial court that these claims were barred by OCGA § 50-21-24 (8) and (9). Id. at 703. In short, we held that the DOT waived sovereign immunity on some but not all claims. We did not hold, as the Diamonds would have it, that a waiver of immunity on some claims amounts to a waiver of immunity on all claims.

The Diamonds cite *Ga. Dept. of Transp. v. Heller*, 285 Ga. 262 (674 SE2d 914) (2009), in support of their argument that a waiver of immunity under one provision of the Tort Claims Act waives immunity for all claims asserted. But *Heller* does not so hold. The Diamonds' argument reverses the argument at issue in *Heller*. There the DOT argued that, "as long as any one of the causes connected to a plaintiff's loss is a cause for which the [s]tate would be immune from suit, the [s]tate would always be immune from any suit stemming from such loss." Id. at 266.

In *Heller*, the plaintiff's wife was killed when the taxicab in which she was riding "spun out of control on a rain-slick interstate highway and hit a tree." Id. at 262. The plaintiff alleged that the day before, the tires of the taxicab had been

6

inadequately inspected and that the inspector had failed to suspend the taxi's operating permit. He also presented evidence that "the DOT may have failed to maintain a proper clear zone for trees located near the edge of the highway, in possible violation of generally accepted engineering standards for the highway and standards set by the DOT itself." Id. at 265 (1). The DOT argued that it could not be subjected to liability because the plaintiff's loss resulted, at least in part, from either inadequate inspection or improper permitting of the taxicab in which his wife was killed. Under OCGA § 50-21-24 (8) and (9), the state is not liable for losses resulting from "[i]nspection powers or functions" or from "[l]icensing powers or functions." Our Supreme Court observed, however, that "these exceptions were not the only provisions of the Tort Claims Act that were at issue in this case." Id. at 264 (1). The state could be liable under OCGA § 50-21-24 (10), the design standards exception, which provides,

> [t]he state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

7

The court concluded that "[b]ecause [the] second event[, the allegedly improper highway design,] leading to the loss [did] not fall within any exception to the [s]tate's waiver of sovereign immunity, . . . the [s]tate ha[d] waived its sovereign immunity in connection with the car accident that led to [the plaintiff's wife's] death." *Heller*, 285 Ga. at 265 (1). The court did not expressly address whether the plaintiff could pursue his claims for negligent inspection and negligent permitting, notwithstanding the statutory prohibition to such liability. It simply rejected the DOT's argument that "as long as any one of the causes connected to a plaintiff's loss is a cause for which the [s]tate would be immune from suit, the [s]tate would always be immune from *any* suit stemming from such loss." Id. at 266 (emphasis supplied).

As the trial court here observed, "[t]here is nothing in OCGA § 50-21-24[, the Tort Claims Act,] that states that the waiver of immunity under one subsection works to waive immunity under all other subsections in connection with any given case." Consequently, the DOT's waiver of immunity under the design exception did not waive immunity on the negligent inspection claims.

2. *Duty of care.*

The Diamonds argue that the trial court erred in granting summary judgment on the ground that the DOT owed them no duty to install any curb, gutter, warning

8

signs or to remove any pavement marking in the area in which the accident occurred, because there was a fact question about whether or not the accident occurred on a commercial driveway. The trial court, however, did not grant summary judgment on the ground that the accident occurred on a commercial driveway. Rather, it ruled that regardless of whether the accident occurred on a commercial driveway, the evidence was undisputed that the accident did not occur on a part of the state highway system upon which DOT owed a duty to motorists. Because the Diamonds failed to point to legal authority establishing a duty under these circumstances, we affirm the grant of summary judgment.

"In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011) (citation omitted). "[T]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law." *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993). "The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed

9

by a common law principle recognized in the case[ ]law." *Rasnick*, 289 Ga. at 566-567 (citation omitted).

The Diamonds argue that the DOT had a duty to use generally accepted engineering and design standards and that it breached this duty when it closed the road in that it failed to construct a curb and gutter on the roadway, it failed to inspect the project to ensure that a curb and gutter had been installed as specified in the plans, it failed to place adequate signs or other warning devices on the roadway, and it failed to remove the center line striping on the roadway. The DOT counters that it had no duty of care because the roadway was a county road.

The Georgia Code of Public Transportation, OCGA § 32-1-1 et seq., establishes a system for delegating administrative and operational responsibilities for the public roads among the state, counties, and municipalities. OCGA § 32-1-2. Statutory and case law is clear that counties -- not the DOT -- "have control of and responsibility for all construction, maintenance, or other work related to the county road system." *Scarborough v. Hunter*, 293 Ga. 431, (2) (a) (746 SE2d 119) (2013) (citation and punctuation omitted). Indeed, OCGA § 32-4-41 (1) expressly delegates that responsibility to counties, providing that "[a] county shall plan, designate, improve, manage, control, construct, and maintain an adequate county road system

10

and shall have control of and responsibility for all construction, maintenance, or other work related to the county road system." And as we have explained, counties may not shift their responsibility to the DOT for county roads that will not become part of the state highway system:

> under OCGA § 32-2-61 (e) even if DOT enters into a contract with a state agency or political subdivision for construction of a public road not then, nor to become upon completion of the contract, part of the state highway system . . . that shall not relieve the agency or the political subdivision of the responsibility for maintaining such public road as such duty is imposed by this Code section and by Code Sections 32-4-41 and 32-4-91. In addition, OCGA § 32-6-50 (c) (1) provides in relevant part that counties and municipalities must "place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic."

*Ogles v. E. A. Mann & Co.*, 277 Ga. App. 22, 27 (2) (c) (625 SE2d 425) (2005) (citations and punctuation omitted). Cf. *Barrett v. Georgia Dept. of Transp.*, 304 Ga. App. 667, 670 (1) (697 SE2d 217) (2010) (because a DOT-owned road was not part of the state highway system, DOT had no duty to maintain it).

In order to show the existence of a duty, the Diamonds presented the affidavit of their expert, Herman Hill. Hill testified that the DOT had the duty to use generally accepted engineering principles and standards when it closed a portion of Lakeshore

11

Drive. Specifically, Hill testified that the DOT "should have utilized signage, including but not limited to, ROAD CLOSED signs or LEFT TURN arrows; or utilized TYPE III barricades to notify motorists that Old Lakeshore Drive was no longer operable" and that it should have "remove[d] the centerline stripping on Old Lakeshore Drive as required by generally accepted engineering principles for obliterating old roadways. . . ." Further, Hill testified that the DOT should have "ensure[d] that the curb and gutter as shown on the approved construction plans [were] installed at the end of Old Lakeshore Dr."

But duty arises either from statute or from a common law principle recognized in the case law. *Rasnick*, 289 Ga. at 566-567. The Diamonds' "efforts to establish a duty through expert testimony fail[] because what duty a defendant owes is a question of legal policy to be decided as an issue of law." *Lawson v. Entech Enterprises*, 294 Ga. App. 305, 310 (1) (669 SE2d 211) (2008) (citation and punctuation omitted). See also *Adams v. APAC-GA, Inc.*, 236 Ga. App. 215, 217 (511 SE2d 581) (1999) (plaintiff could not establish the existence of a duty through expert testimony). Because the existence of a legal duty is a question of law, an expert "affidavit does not, and cannot, create a legal duty where none existed before." *McGarrah v. Posig*, 280 Ga. App. 808, 811 (635 SE2d 219) (2006).

12

In their briefs to the trial court and to this court, the Diamonds point to no statute or case law that establishes a duty owed by the DOT in the circumstances of this case. They refer to OCGA § 32-2-2 (a) (1), but only for the general proposition that the DOT is obligated to plan, construct and maintain public highways. They cite *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996), but that case did not concern the question of the existence of a duty in circumstances similar to those in this case. Rather, that case involved the DOT's attempt to invoke the public duty doctrine, and our Supreme Court's limitation of that doctrine "to the . . . provision of police services." Id. at 8-9 (2).

The Diamonds simply argue that whether the DOT owed them a duty is a question of fact. But whether such a duty exists is a question of law, and the Diamonds have pointed to no statute or case law establishing a basis for imposing a duty on the DOT to erect signs or to take other steps to inform drivers of the closure of a county-owned road.

*Judgments affirmed. Doyle, P. J., and Boggs, J., concur.*

13