SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2409. HAGAN et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

A12A2410. CITY OF ILA et al. v. HAGAN et al.

A12A2411. CITY OF ILA et al. v. HAGAN et al.

A12A2412. HAGAN et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

MCMILLIAN, Judge.

Bobby L. Hagan, individually and as next friend of his wife Charlotte Louise Hagan, an incapacitated adult, brought suit against the Georgia Department of Transportation (GDOT) and the City of Ila, Georgia (City) seeking to recover damages for injuries Mrs. Hagan allegedly suffered when she fell on a sidewalk (the sidewalk) that was located in downtown Ila adjacent to State Route 106 on one side

and a row of buildings owned by Team America Vans, Inc. on the other.[1] GDOT filed a combined motion to dismiss and motion for summary judgment asserting, among other things, that Hagan's claims were barred by sovereign immunity. The City also moved for summary judgment on immunity and other grounds, including that it had no liability for Mrs. Hagan's injuries because it did not own or maintain the part of the sidewalk where she fell. The trial court agreed that GDOT was immune from suit and granted its motion to dismiss, but denied the City's motion for summary judgment. Both Hagan and the City filed applications for interlocutory appeal, which this Court granted, and the parties filed notices of appeal and cross-appeal, which we have consolidated for review.[2]

The events giving rise to this lawsuit occurred in 2008 when Mrs. Hagan fell while walking down the sidewalk to a hair salon. The salon was located in a row of buildings owned by Team America Vans, which ran adjacent to the sidewalk. The sidewalk had been in existence for decades, was uneven in slope, and had been

---

[1] Team America Vans, its CEO Daniel Jack (John) Davis, Jr., the owner of the hair salon and others were sued along with GDOT and the City, but are not parties to this appeal.

[2] The cross-appeals appear to be redundant of the issues raised in the main appeals.

constructed with a one-step "riser,"[3] which was near the entrance of the hair salon. Mrs. Hagan, who had never walked along that stretch of the sidewalk before, apparently lost her balance and fell near the riser, allegedly sustaining serious and permanent injuries.

Although the buildings adjacent to the sidewalk were built sometime in the 1890's, the sidewalk appears to have been built later, although exactly who built it or when it was built is unknown. However, the record shows that in the 1930's, GDOT's predecessor, the State Highway Board of Georgia, acquired a 60-foot right of way across the property where the sidewalk was located, although the deeds were later corrected to 50 feet to reflect the landowners' intent that the right of way not extend into the actual buildings. Further, the buildings and property adjacent to the right of way where Mrs. Hagan fell were later deeded to Team America Vans, and a title examination did not reveal any other conveyances since those deeds were executed.

In 2005, Daniel Jack (John) Davis, Jr., the CEO of Team America Vans, hired a contractor to repair and improve the appearance of the sidewalk, and as part of that project, brick pavers were placed in front of the shop entrances and bricks were added

---

[3] This was also referred to as a "step off."

3

along the curb and the riser, which remained elevated in relation to the surrounding sidewalk. Hagan alleged in his complaint "that an optical illusion exists with respect to the design, configuration, construction, maintenance and location of the step[,]" that defendants "failed to adequately warn the general public" of this defective and "hazardous condition," and that "[d]efendants were negligent in failing to design, configure, build, permit, keep, maintain and/or repair the sidewalk in safe condition."

Against this factual and procedural backdrop, we now turn to the parties' arguments on appeal, reciting additional facts as necessary to consider their contentions.

*Case Nos. A12A2409 and A12A2412*

1. First we consider Hagan's challenge to the dismissal of his claims against GDOT based on the bar of sovereign immunity (Case Numbers A12A2409 and A12A2412, respectively).

"Under the Georgia Constitution, '(t)he General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act . . . (or by enacting a statute) which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.' Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) and (e)." *Ga. Dept. of Transp. v. Heller,* 285 Ga. 262, 263 (1) (674 SE2d 914) (2009).

4

So authorized, the legislature enacted the Georgia Tort Claims Act (GTCA), OCGA § 50-21-20 et seq., to ameliorate against the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity" while recognizing the difference between the roles and duties of state government and private entrepreneurs and the concomitant need to limit the exposure of the state treasury to tort liability. OCGA § 50-21-21 (a). Thus, although the GTCA waives the state's sovereign immunity, OCGA § 50-21-23, that waiver is limited by certain specified exceptions and limitations, which are also set forth in the GTCA. Or, stated succinctly, "[t]he state is only liable in tort actions within the limitations of the [GTCA]." *Ga. Dept. of Transp. v. Bishop*, 216 Ga. App. 57, 58 (1) (453 SE2d 478) (1994). Further,

> any suit brought to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction. The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver, and the trial court's pre-trial ruling on factual issues necessary to decide the OCGA § 9-11-12 (b) (1) motion is reviewed on appeal under the any evidence rule.

(Citations omitted.) *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 265 (2) (644 SE2d 290) (2007).

5

The GDOT based its motion to dismiss on three exceptions under the GTCA–the discretionary function exception, the licensing exception, and the design exception, set forth respectively in OCGA § 50-21-24 (2), (9) and (10).

Under the discretionary function exception, "[t]he state shall have no liability for losses resulting from . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused[.]" OCGA § 50-21-24 (2). A discretionary function or duty is defined in OCGA § 50-21-22 (2) and "means a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."

Our appellate courts have considered the scope of this exception on several occasions, and our Supreme Court has emphasized that it is "limited to basic governmental policy decisions" and should not be extended in such a way that *any* decision affected by social, political, or economic factors would be encompassed within the exception. *Dept. of Transp. v. Brown,* 267 Ga. 6, 7 (1) (471 SE2d 849

(1996).[4] Thus, for the exception to apply, the discretionary function or duty must be one that requires a state officer or employee to exercise his or her *policy judgment* in choosing among alternate courses of actions based upon the applicable factors. *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 859 (1) (686 SE2d 455) (2009). "The key to this issue is the difference between design and operational decisions and policy decisions." *Dept. of Transp. v. Brown,* 267 Ga. at 7 (1). For example, in *Brown*, the court held that while the initial decision to build a road was a policy decision, the decision to open the road before traffic lights were installed was an operational decision, and whether to use stop signs was a design decision. Similarly, while in *Ga. Dept. of Transp. v. Smith*, 314 Ga. App. 412, 414 (1) (724 SE2d 430) (2012), we rejected the GDOT's evidence and argument that we should defer to its identification of a "hierarchy or priorities" for the allocation of limited resources, we did so because the allegedly negligent failure to remove a hazardous tree in that case was *not* the policy but rather an "operational" decision by the responsible foreman to not carry out the GDOT's tree removal policy; and the alleged negligence was therefore not a

---

[4] *Brown* is considered the seminal case on this issue, and gave the following oft quoted example: "Whether to buy copier paper from a particular vendor, and in which colors, are decisions that might be affected by all three factors, but they are not policy decisions." *Dept. of Transp. v. Brown,* 267 Ga. at 7 (1).

"discretionary function." Id. at 414 ("the GDOT foreman who was responsible for weekly inspections of the area that included the subject tree testified by deposition that during his inspections, beginning in 2004, he did not inspect trees."). See also *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 859 (1) (when and where to send out DOT personnel to inspect roads for hazards after a rain was operational); see also *Edwards v. Dept. of Children & Youth Svs.,* 271 Ga. 890, 892 (525 SE2d 83) (2000) (decision on type of emergency medical care to provide incarcerated juveniles does not fall within the exception);[5] *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 683 (523 SE2d 571) (1999) (foster parent's decision to leave a two-year-old in a swimming pool not a basic policy decision).

As the citations above illustrate,[6] there are a number of Georgia appellate court cases addressing the applicability of the discretionary function exception in a variety of contexts. But, as the trial court noted, there appears to be no Georgia authority directly addressing this exception in the specific context of sidewalk repair or maintenance. However, the Oregon Court of Appeals has considered this issue under

---

[5] The court noted that the department's failure to promulgate policies and procedures to diagnose and refer sick inmates was not at issue.

[6] We do not mean to suggest that we have provided an exhaustive list of those cases.

similar facts, *Ramirez v. Hawaii T & S Enters., Inc.*, 39 P3d 931 (Ore. App.) (2002); the trial court found this opinion persuasive and so do we.

In *Ramirez*, the plaintiff sued the City of Portland after she fell stepping off a broken curb in downtown Portland. The City argued that it had made a discretionary decision to divert limited funds from sidewalk inspection to "the more pressing needs occasioned by . . . floods," id. at 933, and claimed immunity under ORS 30.265 (3) (c), "a provision of the Oregon Tort Claims Act that immunizes public bodies and their employees from liability for 'any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.'" Id. at 932. The Oregon Court cited several examples of immune and non-immune decisions or actions, and concluded that "[t]he operative distinction, then, is between choosing a course of action or inaction, on the one hand, and putting that choice into effect, on the other." Id. at 933. The Oregon Court ultimately agreed with the City that it was afforded immunity by the exception, finding that the City's "decision involved the exercise of judgment . . . [and] prioritized public services according to perceived needs." Id. at 934.

In this case, GDOT also contended that it was entitled to immunity because it had made a discretionary decision not to inspect, maintain or repair sidewalks. To

9

support its contention, GDOT submitted the affidavit of GDOT State Maintenance Engineer Eric Pitts, in which he averred that due to limited human resources and budgetary constraints,[7] GDOT prioritizes its duty to oversee and perform maintenance on the state highway systems by directing "funds and personnel . . . first toward matters that impact the operation, safety and efficiency of the roadways themselves, versus the portions of the state right-of-way that are adjacent to the roadways." Thus, "[a]s a result of its determination of maintenance priorities and its allocation of limited resources to same, and while GDOT can elect to perform maintenance functions on any property that is part of a state highway right-of-way, GDOT does not routinely perform maintenance or repair work on sidewalks[,]" especially when the sidewalks are located on a state right-of-way within the corporate limits of municipalities. And the record shows that this policy of not performing maintenance or repairs on sidewalks within GDOT's right-of-way was orally communicated to workers in the field and their supervisors.

Although we are mindful of our Supreme Court's admonition to avoid "the exception swallow[ing] the waiver" *Brown*, 267 Ga. at (7) (1), it seems to us that

---

[7] Pitts averred that the GDOT's budget provided by the General Assembly includes a line item to maintain roads and bridges.

10

GDOT's decision to allocate its maintenance budget by prioritizing services based upon considerations such as safety and population is a basic governmental policy decision, analogous to the situation in *Ramirez*. It follows that GDOT's specific decision to forego routine inspections, repairs, or maintenance of sidewalks within a state right-of-way as a result of prioritizing maintenance activities based on budgetary constraints would fall under the discretionary function exception. Thus, because this was the type of governmental decision that the legislature intended to protect from tort liability, the trial court did not err by dismissing Hagan's claims against GDOT based on the bar of sovereign immunity. And because we conclude that the trial court properly dismissed Hagan's claims against GDOT based on the discretionary function exception, it is unnecessary for us to consider whether the other two exceptions are also applicable here; likewise, it is unnecessary for us to consider whether GDOT was entitled to summary judgment on Hagan's claims. Accordingly, in Case Number A12A2409, we affirm the judgment dismissing Hagan's claims against GDOT, and in Case Number A12A2412, we dismiss Hagan's cross-appeal as moot.

2. The City challenges the trial court's denial of its motion for summary judgment in this appeal and cross-appeal, Case Numbers A12A2411 and A12A2410, respectively. As more fully set forth below, we agree with the City that summary judgment was proper here and reverse.

"To prevail on [his] negligence claim, [Hagan] must show that the [C]ity had (a) duty, or obligation, recognized by law, requiring (it) to conform to a certain standard of conduct, for the protection of others against unreasonable risks. (Punctuation and citation omitted.) *Williams v. City of Social Circle*, 225 Ga. App. 746, 747 (484 SE2d 687) (1997). OCGA § 32-4-93 governs the liability of municipalities for defects in public roads, and the obligations expressed in that code section also extend to public sidewalks. *Williams*, 225 Ga. App. at 747, and cites. Pursuant to subsection (a) of that section

> [a] municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

And subsection (b) is also pertinent here and provides that

12

[a] municipality is relieved of any and all liability resulting from or occasioned by defective construction of those portions of the state highway system or county road system lying within its corporate limits or resulting from the failure of the department or the county to maintain such roads as required by law unless the municipality constructed or agreed to perform the necessary maintenance of such road.

Thus, pursuant to subsection (a), "a city is generally obligated to maintain the roads of its municipal street system. [And, pursuant to subsection (b), a] city is similarly obligated to maintain those portions of the state highway system lying within its corporate limits if the city has 'constructed or agreed to perform the necessary maintenance of such roads.'" *Williams*, 225 Ga. App. at 747.

The *Williams* case, in which we affirmed the grant of summary judgment to the city, id. at 748, also involved an injury on a sidewalk located within the city limits but on a state right-of-way within the city limits, and the only admissible evidence showed that the city did not own and had never maintained the sidewalk. Here, the portion of the sidewalk where Mrs. Hagan fell was at least partially within the state right-of-way, and although it is questionable whether the right-of-way encompassed the entire sidewalk, there is no evidence that the City owned any part of the sidewalk

and no evidence that the City performed any maintenance, repairs or renovations to the sidewalk.

Hagan asserts that the City entered into an agreement in 1993 with GDOT to maintain the sidewalk where Mrs. Hagan fell, as part of a state-funded sidewalk project. But the evidence unequivocally showed the portion of the sidewalk where Mrs. Hagan fell was not included in that project,[8] and no evidence exists that the City assumed any duty to maintain that portion of the sidewalk as part of the 1993 agreement. Because our review of the record supports the City's claim that Hagan presented no evidence to support his contention that the City had or breached a duty to maintain the sidewalk, the City was entitled to summary judgment on Hagan's claims against it. *Williams*, 225 Ga. App. at 749.[9]

*Judgment affirmed in Case Number A12A2409. Judgment reversed in Case Number A12A2411. Appeals dismissed as moot in Case Numbers A12A2410 and A12A2412. Barnes, P. J., and McFadden, J., concur.*

---

[8] This evidence includes the opinion of Hagan's own expert and maps showing the sidewalks included in the project.

[9] Once again, we dismiss the cross-appeal, Case Number A12A2410, as moot.

14