**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A1912. GEORGIA DEPARTMENT OF TRANSPORTATION
v. THOMPSON et al.

BROWN, Judge.

This interlocutory appeal arises out of an action by Carol and John Thompson, individually, and as parents and next friends of their two children ("the Thompsons"), against the Georgia Department of Transportation ("DOT"), asserting claims of negligence arising out of a collision in which Carol and the two children suffered severe injuries. DOT appeals from the trial court's order denying its motion to dismiss based on sovereign immunity. For the reasons set forth below, we vacate the trial court's order denying DOT's motion to dismiss, and remand this case to the trial court.[1]

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is [any] evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." (Citation and punctuation omitted.) *Ga. Dept. of Transp. v. Owens*, 330 Ga. App. 123, 133 (4) (766 SE2d 569) (2014).

So viewed, the record shows that on June 16, 2014, Carol and her two children were traveling south on Cleveland Highway (State Route 11), near its intersection with Jess Helton Road. Cleveland Highway is a two-lane highway, however, at that time and location, on the northbound side of the roadway — as the highway approached Jess Helton Road — there was a left-hand passing lane.[2] As Carol approached the intersection, a vehicle traveling north on Cleveland Highway was waiting in the passing lane to turn left onto Jess Helton Road. A third vehicle, traveling north on Cleveland Highway in the passing lane, swerved to avoid hitting the vehicle turning left, traveled into the right northbound lane and onto the shoulder

Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of disapproving *Ga. Dept. of Transp. v. Dupree*, 256 Ga. App. 668 (570 SE2d 1) (2002).

[2] The record reflects that the passing lane no longer exists; it has been converted into a turn lane.

of the highway, lost control of the vehicle, and struck Carol's vehicle, causing serious injuries.

The Thompsons sued DOT under the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., alleging that DOT was negligent in the design, building, and maintenance of Cleveland Highway at its intersection with Jess Helton Road. Specifically, the Thompsons allege that DOT failed to provide the minimum required sight distance for drivers approaching the intersection; failed to post adequate and sufficient speed warnings; and failed to provide and/or maintain the shoulder of the highway at a proper slope. Pursuant to OCGA § 9-11-9.1, the Thompsons attached to their complaint the affidavit of engineer Herman Hill. In that affidavit, Hill opined that DOT failed to provide minimum required sight distance for drivers at the location of the Thompsons' accident, and that DOT was aware of the history of accidents and failed to address the problem.

DOT filed a motion to dismiss for lack of subject matter jurisdiction, asserting that the Thompsons' claims are barred by the discretionary function and design exceptions to the State's waiver of sovereign immunity. See OCGA § 50-21-24 (2), (10). Following a hearing on the motion, during which Hill testified, the trial court denied the motion, finding that (1) while maintenance of the shoulder arguably falls

3

under the policy category such that the discretionary exception might apply, the Thompsons have put forth expert testimony that the shoulder condition violated DOT maintenance standards, and (2) DOT did not rebut Hill's opinion that DOT committed engineering and design malpractice, which led to the Thompsons' injuries. DOT appeals this ruling.

Pursuant to Article I, Section II, Paragraph IX (e) of the Georgia Constitution of 1983,

> sovereign immunity from suit extends to all state departments and agencies unless properly waived through an act passed by the General Assembly. Sovereign immunity is waived by a legislative act only if the statutory language specifically provides that sovereign immunity is waived and the extent of such waiver.

(Citation and punctuation omitted.) *Ga. Dept. of Transp. v. Balamo*, 343 Ga. App. 169, 170 (1) (806 SE2d 622) (2017). The doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed. Id. at 171 (1). The GTCA declares the public policy of this state to be that "the state shall only be liable in tort actions within the limitations" set out in the GTCA. OCGA § 50-21-21 (a).

Consequently, although the [GTCA] waives the state's sovereign immunity, OCGA § 50-21-23, that waiver is limited by certain specified exceptions and limitations, which are also set forth in the [GTCA]. Or, stated succinctly, the state is only liable in tort actions within the limitations of the [GTCA]. Further, any suit brought to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction. The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver. . . .

(Citation and punctuation omitted.) *Diamond v. Ga. Dept. of Transp*., 326 Ga. App. 189, 190 (1) (756 SE2d 277) (2014). Under the GTCA, "[t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment. . . . " OCGA § 50-21-23 (a). There are several exceptions to the state's waiver of sovereign immunity, including the design exception which states that "[t]he state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvements to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards *in effect at the time of preparation of the plan or design*." (Emphasis supplied.) OCGA § 50-21-24 (10). The other exception to the state's waiver of

sovereign immunity raised in this case is the discretionary function exception which provides that "[t]he state shall have no liability for losses resulting from . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused." OCGA § 50-21-24 (2). A discretionary function or duty is defined in OCGA § 50-21-22 (2) and "means a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." See *Hagan v. Ga. Dept. of Transp.*, 321 Ga. App. 472, 475 (1) (739 SE2d 123) (2013). Whether DOT is entitled to sovereign immunity under either or both of these exceptions "is a threshold issue that the trial court [is] required to address before reaching the merits of any other argument." (Citations and punctuation omitted.) *Gonzalez v. Ga. Dept. of Transp.*, 329 Ga. App. 224, 225 (764 SE2d 462) (2014).

Here, the Thompsons' expert, Herman Hill, testified that Cleveland Highway originally was planned in 1922 as a two-lane road, and redesigned in 1973 to add three passing lane locations, one of which was located near Jess Helton Road heading northbound out of Gainesville toward Dahlonega. According to Hill, the redesign did

6

not change any of the alignment, curvature, or slopes on the roadway, but created a potential problem at the location of the Thompsons' accident because vehicles waiting to turn left onto Jess Helton Road from Cleveland Highway could be at a dead stop in the left passing or "fast lane," and not easily seen by advancing cars traveling in that passing lane. During the hearing on DOT's motion to dismiss, Hill testified on direct examination that the speed limit on Cleveland Highway is 55 miles per hour, which requires approximately 495 feet of stopping sight distance[3] based on the 1965 American Association of State Highway and Transportation Officials ("AASHTO") standards, applicable to this case. Hill opined that a driver in the left passing lane did not have sufficient sight distance to stop at the intersection, such that the roadway was not in substantial compliance with the "generally accepted engineering design standards in effect at the time of the [re]design, [in] '73."[4] During his deposition, however, Hill testified that pursuant to the 1965 AASHTO standards, the minimum stopping sight distance at this location was in the "ballpark" of at least

---

[3] "Stopping sight distance" is the distance necessary for a driver traveling on the roadway who comes upon an object that is stopping or stopped in front of it to recognize the object and then safely stop or avoid the object in sufficient time.

[4] The record does not contain a "design standard of 1973." During cross-examination, Hill acknowledged that "the 1965 AASHTO is the standard in this case."

7

410 feet, and that this standard had been met.[5] As he further explained during the hearing, a vehicle traveling 50 miles per hour must have a minimum stopping sight distance of 350 feet, and a vehicle traveling 60 miles per hour must have 475 feet. Hill also confirmed in his deposition that the 1973 redesign plans met AASHTO's minimum stopping sight distance requirements. On cross-examination, Hill testified that on the date of the Thompsons' accident "the measured sight distance available to a driver" traveling northbound in the center lane was "in the vicinity of 500 feet," which exceeded the minimum requirements set forth in the 1965 AASHTO standards.

As to the signage on the roadway, Hill testified that a warning sign prior to the intersection instructed "merge left" or "move to the left," but did not indicate that vehicles could be turning from the left lane onto Jess Helton Road. Hill also stated that there was a "standard[-]T" yellow diamond warning sign informing drivers that there was an intersecting road ahead, but he explained that there was another road intersecting Cleveland Highway before Jess Helton Road and that drivers could interpret the sign as applying to the first intersection. According to Hill, sign

_____

[5] Hill visited the scene of the accident in 2015, but never recorded the actual stopping distance. During that visit, he estimated "in the vicinity of 400 feet sight distance available" for a driver approaching Jess Helton Road, but he could not be more certain because he did not record the measurement.

8

standards are governed by the Manual on Uniform Traffic Control Devices ("MUTCD"), which requires warning signs to be 500 or more feet back. Hill stated that the "standard[-]T" sign was further than 500 feet back and complied with MUTCD standards.

After DOT filed its motion to dismiss, the Thompsons amended their complaint with a second affidavit from Hill. In that affidavit, Hill again opined that the roadway was negligently designed because the passing zone did not include a sign warning a passing driver that a vehicle ahead might be making a left turn onto Jess Helton Road, and that the roadway was improperly maintained because the right shoulder had deteriorated to the point where there was greater than a two inch drop from the pavement to the shoulder. But, Hill altered his opinion about the available "sight distance," opining for the first time that the issue at this location on the roadway was not a "standard stopping sight distance issue," but a "decision sight distance issue," which is "the distance required for a driver to detect unexpected or otherwise difficult-to-perceive information sources or hazards in a roadway environment that may be visually cluttered, recognize the hazard or its threat potential, select an appropriate speed and path[,] and initiate and complete the required safety maneuver." Hill averred that at this location, 750 feet of decision-making sight

9

distance was required, but acknowledged that decision-making sight distance did not become part of the AASHTO standards until 1984. In Hill's opinion, northbound drivers should have been warned of the left-hand turn lane farther in advance because the decision-making sight distance was not sufficient. Hill opined that the existing signage was a "man-trap" because it placed passing vehicles in a collision path with vehicles turning left onto Jess Helton Road, and that DOT failed to follow MUTCD standards by not placing a sign warning vehicles using the passing lane of the Cleveland Highway/Jess Helton Road intersection. As Hill opined in his affidavit:

> The passing zone had no signs warning of the Jess Helton Intersection, nor did it have signs warning vehicles utilizing the passing [lane] that a vehicle might be turning left in the area just before the end of the passing lane. In the instant case[,] a vehicle utilizing the passing lane did not have enough time after passing a car to get back into the right lane and avoid a vehicle making a left turn onto Jess Helton Road. As a result, the driver of the vehicle tried to get back into the right lane and his tires went off the roadway. Because the shoulder on the right side of [Cleveland Highway] was negligently maintained, the driver overcorrected when his tire went off the shoulder and he veered into the oncoming lane and hit [Carol's] vehicle coming from the opposite direction. . . . The design failed to substantially comply with the engineering standards applicable at the time of the design because it failed to provide sufficient warnings and traffic control devices for a significant left hand movement, considering [DOT] knew vehicles were

10

likely to be using the left lane both to turn and to pass. Warnings such as double signs indicating left turning traffic ahead with signs . . ., or a flashing beacon or a word message should have been made in the roadway indicating that an intersection was ahead and that a car making a left hand turn might be ahead.

With regard to the shoulder of the roadway, Hill averred that at the time of the accident, the right shoulder had deteriorated to the point where there was a greater than two-inch drop from pavement to the dirt shoulder. In Hill's opinion this drop caused the driver of the vehicle that hit the Thompsons' vehicle to overcorrect when his tire went off the shoulder and veer into oncoming traffic. Hill explained that he could not measure the drop himself when he performed a site inspection because it had been repaired, but he testified that based on police photographs and video of the site taken at or near the time of the accident, he could "clearly" see that the shoulder was more than two inches below the surface pavement. According to Hill, DOT Maintenance Standard 305 requires repair of low shoulders or rutting of two inches in depth or greater.

1. As an initial matter, DOT contends that the trial court applied an incorrect burden of proof for establishing a waiver of sovereign immunity by requiring DOT

to provide evidence to rebut Hill's opinions, and the Thompsons to simply show that their claims were not frivolous. We agree.

As noted previously, the party seeking to benefit from a waiver of sovereign immunity has the burden of proof to establish that waiver. In this vein, "[t]o avoid application of immunity under [the design exception], [a plaintiff] must submit expert testimony or other competent evidence to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared." *Balamo*, 343 Ga. App. at 171 (1). When faced with a motion to dismiss for lack of subject matter jurisdiction on the grounds of sovereign immunity, the trial court has two options: It may hold a hearing prior to trial and hear evidence as provided by OCGA § 9-11-12 (d), or it may defer final determination until trial. See *James v. Ga. Dept. of Public Safety*, 337 Ga. App. 864, 867-868 (2) (789 SE2d 236) (2016). "When ruling on a motion to dismiss based upon jurisdictional grounds, the trial court must make the determination acting as the trier of fact. Its evaluation rests on where the preponderance of the evidence lies, not necessarily on whether the issue may be decided as a matter of law." *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 842-843 (1) (392 SE2d 37) (1990).

12

In this case, the trial court elected to proceed under the first "hearing option" and ultimately denied DOT's motion. On the issue of design of the roadway, the trial court ruled that DOT had not put forth any "testimonial evidence in rebuttal at this time" to Hill's opinion that the design of the roadway violated AASHTO standards requiring more than 750 feet decision sight distance, and that while DOT had pointed to some weaknesses in Hill's testimony, "'an expert's affidavit . . . does not have to unequivocally demonstrate the evidentiary merits of the malpractice claim . . . and may rest upon evidentiary conclusions. . . .'" The trial court concluded its order as follows:

> With the deposition and affidavit of their expert witness, the [Thompsons] have carried their burden of proof on a motion to dismiss under OCGA § 9-11-12 (b) (1) by showing sufficient evidence of [DOT's] malpractice in order to indicate a waiver of sovereign immunity. As Herman Hill's testimony, which supports [the Thompsons'] claims, is the only evidence before the [c]ourt, [the Thompsons] have shown their claims are not frivolous. . . .

The trial court made two errors in evaluating DOT's motion to dismiss. First, in finding the Thompsons' claims "not frivolous," and noting the more relaxed "requirements" of an expert affidavit, the trial court improperly based its ruling on the standard used when considering a motion to dismiss a complaint for professional

13

malpractice pursuant to OCGA § 9-11-12 (b) (6) for failure to state a claim on the ground that the expert affidavit filed in accordance with OCGA § 9-11-9.1 was insufficient, which was not the basis for DOT's motion. As our cases make clear, however, the affidavit required by OCGA § 9-11-9.1 is an initial *pleading* requirement, not an evidentiary requirement. See *Bowen v. Adams*, 203 Ga. App. 123 (416 SE2d 102) (1992) ("an expert affidavit which would be insufficient to satisfy the evidentiary standards of OCGA § 9-11-56 may nevertheless be sufficient to satisfy the pleading standards of OCGA § 9-11-9.1"). See also *Porquez v. Washington*, 268 Ga. 649, 652 (1) (492 SE2d 665) (1997) (discussing purpose of OCGA § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits, and noting that permitting a plaintiff to amend an expert affidavit to meet the requirements of OCGA § 9-11-9.1 helps to insure that a complaint is not frivolous); *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 287 (1) (378 SE2d 708) (1989). That different standards apply is emphasized by the fact that a complaint accompanied by a defective expert affidavit is subject to dismissal *for failure to state a claim* under OCGA § 9-11-12 (b)

14

(6), while a complaint that fails to establish a waiver of sovereign immunity is subject to dismissal for *lack of subject matter jurisdiction* under OCGA § 9-11-12 (b) (1).[6]

Second, the trial court improperly shifted the burden of proof to DOT when it ruled that DOT had failed to put forth any "testimonial evidence in rebuttal at this time." As set out above, the burden is on the Thompsons to establish that DOT's conduct is excepted from sovereign immunity. See *Balamo*, 343 Ga. App. at 171 (1). Indeed, to avoid application of immunity under OCGA § 50-21-24 (10), the plaintiff "must submit expert testimony or other competent evidence to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared." (Citations and punctuation omitted.) *Balamo*, 343 Ga. App. at 171 (1). As DOT correctly notes in its brief, the trial court was required to consider DOT's motion under a preponderance

---

[6] In its order, the trial court relied on *Ga. Dept. of Transp. v. Dupree*, 256 Ga. App. 668 (570 SE2d 1) (2002), for the following proposition: If an OCGA § 9-11-9.1 "expert opinion is sufficient to demonstrate that the malpractice case is not frivolous, then it should also be sufficient for a preliminary ruling to satisfy subject matter jurisdiction." 256 Ga. App. at 673 (1) (b). But, as we just explained, the standard governing dismissal of a complaint for failure to state a claim based on an insufficient expert affidavit is different than the standard governing dismissal of a complaint for lack of subject matter jurisdiction on the ground of sovereign immunity. Accordingly, to the extent this Court's statement in *Dupree* conflates the two standards, it is disapproved.

15

of the evidence standard, with the burden of establishing the waiver of sovereign immunity on the Thompsons. Because the trial court's ruling on DOT's motion to dismiss was based upon incorrect legal standards, we vacate its order and remand the case to the trial court for it to reconsider the motion under the proper legal standards. See *Coffey v. Fayette County*, 279 Ga. 111, 112 (610 SE2d 41) (2005); *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524-525 (788 SE2d 122) (2016).

2. DOT's remaining enumerations of error are rendered moot by our holding in Division 1.

*Judgment vacated and case remanded. Barnes, P. J., and Mercier, J., concur.*