**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1323. SIVAK v. GEORGIA DEPARTMENT OF NATURAL
    RESOURCES.

WATKINS, Judge.

Ed Sivak appeals from orders of the Superior Court of Dade County granting a motion to dismiss and motion for summary judgment filed by the Georgia Department of Natural Resources ("DNR") in Sivak's action to recover for injuries he sustained after falling at Cloudland Canyon State Park ("Cloudland" or "the Park"). On appeal, Sivak argues that the trial court erred in finding that DNR's sovereign immunity had been preserved by the discretionary function exception in the Georgia Tort Claims Act ("GTCA")[1] and that the Recreational Property Act

---

[1] See OCGA § 50-21-24 (2).

("RPA")[2] barred Sivak's claims. For the reasons set forth infra, we affirm the trial court's ruling that Sivak's claims were barred by sovereign immunity and thus subject to dismissal. Because the trial court lacked authority to decide the summary judgment motion, we vacate that order.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity."[3]

So viewed, the evidence shows that Cloudland is an approximately 4,000-acre state park that was founded in the 1930s. The Park, which is situated on a large, flat plateau overlooking Cloudland Canyon, includes 60 miles of trails, 16 cottages, 10 yurts, and over 100 camping sites. One of the main attractions is the "Main Overlook," a rocky, natural geological formation that allows visitors to look out over the part of the canyon where two creeks converge and combine.

---

[2] See OCGA § 51-3-20 et seq.

[3] (Citation and punctuation omitted.) *Bd. of Trustees of Ga. Military College v. O'Donnell*, 352 Ga. App. 651 (835 SE2d 688) (2019).

2

A portion of the Main Overlook is lined by wooden railings and concrete mounds that were installed in the 1930s by the Civilian Conservation Corps. However, there are "lots and lots of overlook that do not have any handrails at all[.]" Near the edge of the Main Overlook, there is a natural crevice that lies within the Corps handrails. There are no signs that warn visitors of the crevice, and there are no railings or other barricades surrounding it.

Sivak, his wife, and their two children visited Cloudland over Labor Day weekend in 2018. After spending the night in the Park's Yurt Village, the family hiked to the Main Overlook. While at the Main Overlook, Sivak began talking to another family about their dog. Because of the presence of the Corps railings, Sivak "felt like everything around [him] was stable and flat and that [he] was safe." Thus, while Sivak was talking to the other family, he took "a step backwards[,] thinking that [he] was going to lean up against the fencepost." Instead, he fell through the crevice and sustained serious injuries.

Sivak sued DNR for negligence based on its failure to place "cones, barriers, signs or any kind of warnings . . . near the dangerous hole to warn or alert individuals that there was a hazardous condition." After discovery, DNR moved to dismiss for

3

lack of subject matter jurisdiction based on, inter alia, the discretionary function exception of the GTCA. DNR also sought summary judgment under the RPA.

Following a hearing, the trial court entered simultaneous orders granting both motions. With respect to the motion to dismiss, the trial court concluded that the discretionary function exception applied because

> [DNR's] high-level decisions not to have a specific mandate but rather to allow discretion among Park employees regarding what course of conduct to take in order to inspect, maintain and/or modify the railing structures on the subject hiking trail, as well as the Park's implementation of same, establishe[d] on its face, that all of [DNR's] decisions [regarding how/when to inspect, maintain, repair and/or modify hiking trails were] susceptible to a policy analysis.

With regard to the summary judgment motion, the court found that the RPA barred Sivak's claims[4] because neither of the two statutory exceptions in OCGA § 51-3-25 applied. This appeal followed.

1. Sivak argues that the trial court erred in finding that sovereign immunity bars his action because the discretionary function exception to the waiver of immunity for tort actions applies only to an exercise of discretion that amounts to a governmental

---

[4] See OCGA §§ 51-3-22; 51-3-23.

4

policy decision, not to routine operational decisions. He also contends that the trial

court did not find that DNR staff's failure to address the safety hazard reflected any

kind of policy judgment and thus "attempt[ed] to contort [DNR's] wholesale *lack* of

any applicable policies into a policy judgment itself[.]"

> [T]he applicability of sovereign immunity to claims brought
> against the State is a jurisdictional issue. Therefore, the applicability of
> sovereign immunity is a threshold determination, and, if it does apply, a
> court lacks jurisdiction over the case and, concomitantly, lacks authority
> to decide the merits of a claim that is barred. Any suit against the State
> barred by sovereign immunity is subject to dismissal pursuant to OCGA
> § 9-11-12 (b) (1) for lack of subject matter jurisdiction.[5]

As a general rule, the sovereign immunity of the State is waived by the GTCA[6]

"for the torts of state officers and employees while acting within the scope of their

official duties or employment[.]"[7] The GTCA, however, contains exceptions to this

---

[5] (Citations, punctuation and emphasis omitted.) *O'Donnell*, 352 Ga. App. at 653-654 (1).

[6] See OCGA § 50-21-20 et seq.; see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a), (e).

[7] OCGA § 50-21-23 (a); accord *Ga. Dept. of Human Svcs. v. Spruill*, 294 Ga. 100 (751 SE2d 315) (2013).

waiver immunity. As a department of the State, DNR is subject to the waiver and the exceptions set forth in the GTCA.[8]

One such exception to liability is for "losses resulting from [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused[.]"[9] A "discretionary function or duty" is statutorily defined as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."[10]

The Supreme Court of Georgia has cautioned that broadly extending the discretionary function exception to include any decision affected by "social, political, or economic factors" could allow the exception to "swallow the waiver."[11] "Thus, for

---

[8] See *Bruton v. Ga. Dept. of Human Resources*, 235 Ga. App. 291, 293 (509 SE2d 363) (1998). See generally OCGA § 12-2-1 (creating DNR).

[9] OCGA § 50-21-24 (2).

[10] OCGA § 50-21-22 (2).

[11] *Dept. of Transp. v. Brown*, 267 Ga. 6, 7 (1) (471 SE2d 849) (1996) ("Whether to buy copier paper from a particular vendor, and in which colors, are decisions that might be affected by all three factors, but they are not policy decisions.").

the exception to apply, the discretionary function or duty must be one that requires a state officer or employee to exercise his or her *policy judgment* in choosing among alternate courses of actions based upon the applicable factors."[12]

In *Berkovitz v. United States*, the United States Supreme Court adopted a two-step test to analyze whether governmental conduct is immune from suit under the discretionary function exception to the federal Tort Claims Act,[13] after which the GTCA was fashioned:[14] (1) whether conduct involves an "element of judgment or choice"[15]; and, if so, (2) "whether that judgment is of the kind the discretionary function exception was designed to shield."[16]

---

[12] *Hagan v. Ga. Dept. of Transp.*, 321 Ga. App. 472, 475 (1) (739 SE2d 123) (2013) (emphasis in original).

[13] See *Berkovitz v. United States*, 486 U. S. 531, 536 (II) (108 SCt 1954, 100 LE2d 531) (1988).

[14] See *Edwards v. Ga. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 891-892 (525 SE2d 83) (2000) ("The state act was patterned in most respects after the Federal Tort Claims Act, and the discretionary function exception is similar to the federal exception as developed by case law.").

[15] By contrast, "[t]he discretionary function exception will not apply when a . . . statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U. S. at 536 (II).

[16] Id.

We have found no published Georgia case explicitly applying this two-step test.

However, in *Brantley v. Department of Human Resources*,[17] our Supreme Court relied

on caselaw that applied the test when the Court explained:

> [The] definition of discretionary function [in OCGA § 50-21-22 (2)] is
> almost identical to the definition of discretionary function that has been
> developed by the federal courts in construing the discretionary function
> exception to the Federal Tort Claims Act. In relevant part, the [United
> States] Supreme Court has stated that the purpose of the discretionary
> function exception under the Federal Tort Claims Act is to prevent
> judicial "second-guessing" of legislative and administrative decisions
> grounded in social, economic, and political policy through the medium
> of an action in tort, and that, for that reason, when properly construed,
> the exception protects only governmental actions and decisions based on
> considerations of public policy.[18]

---

[17] *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 682-683 (523 SE2d 571)
(1999)

[18] Id. (citing *United States v. Gaubert*, 499 U. S. 315, 323 (111 SCt 1267, 113 LE2d
335) (1991)) (additional citations and punctuation omitted); see also 28 USC § 2680
(a) (providing an exception from waiver for "[a]ny claim . . . based upon the exercise
or performance or the failure to exercise or perform a discretionary function or duty
on the part of a federal agency or an employee of the Government, whether or not the
discretion involved be abused[ ]").

In determining whether the discretionary function immunity of the GTCA applies, we apply the test announced in *Berkovitz*, keeping in mind the statutory definition of "[d]iscretionary function or duty" found within OCGA § 50-21-22 (2). With regard to the first step of the test, Sivak argues that there is no evidence in the record that DNR made a policy judgment, as opposed to simply ignoring a potential hazard. He points to an e-mail thread in the record where park management asked the engineering chief (who at the time was a region supervisor) to present possible options for "safing up" the area around the crevice.[19] The supervisor proposed installing new steel handrails around the Main Overlook and the crevice.

Ultimately, park management decided not to install the metal handrails. They testified that they had to weigh the benefits from adding safety measures, such as steel railings and warning signs, with DNR's objectives of preserving the natural setting and maintaining the historical integrity of the original railing.

Because there is no Georgia authority directly addressing this exception in the specific context of balancing safety with aesthetic and historical considerations in a

[19] DNR employees noted in the e-mail exchange that there may be other areas that "warrant[ed] 'safing' up[,]" but that the location in question was "more critical since it [is] at an overlook which brings people to the edge to look over at the railing."

state park, we turn to persuasive caselaw where federal courts have considered the issue under similar facts.[20] In *Kiehn v. United States*, the Tenth Circuit Court of Appeals held that "[t]he decision whether or not to post warning signs at Dinosaur National Monument [was] clearly discretionary as it involve[d] an element of judgment or choice."[21]

In *Mahon v. United States*, a wedding guest was injured after he fell from a second-story portico at an historic mansion overseen by the Boston Historical Park Service, a unit of the Interior Department's National Park Service.[22] The First Circuit Court of Appeals noted that the plaintiff had "flag[ged] no discretion-restraining statute, regulation, or policy that compel[led] Boston Park to adopt a concessioner's risk-management proposals, whether they be increasing the [portico] railing's height, plunking down potted plants or stringing up rope to stop visitors from getting to the railing — or anything else, for that matter."[23] Thus, the court concluded that the

---

[20] See *Hagan*, 321 Ga. App. at 476 (1) (holding that an Oregon case applying the exception in a factually analogous context was persuasive).

[21] (Punctuation omitted.) 984 F2d 1100, 1103 (II) (A) (10th Cir. 1993).

[22] 742 F3d 11 (1st Cir. 2014).

[23] Id. at 15.

decision whether to implement the recommendations involved choice, which meant that the complained-of conduct was the product of decision.[24]

Here, Sivak has not met his burden of proof[25] by pointing to any statute, regulation, or policy requiring DNR to warn visitors of potential danger or to add additional barriers around the crevice. Because the record reflects that DNR had a policy of preserving the Park's natural beauty and historical accuracy, the trial court did not err in finding that its decisions regarding what course of conduct to take were subject to policy analysis[26] and thus were a policy judgment.[27] The fact that the policy

---

[24] See id. at 15-16; see also *Shansky v. United States*, 164 F3d 688, 691 (1st Cir. 1999) (holding the discretionary function exception in the FTCA applied to park service's decision not to install a handrail and warning signs by an antique wooden threshold at an exit from a national monument because "management ha[d] discretion to determine which risks [we]re 'acceptable,' and thus to balance, at some level, concerns for human safety against concerns for preserving the original qualities of a cultural resource"); *Zumwalt v. United States*, 928 F2d 951, 955 (10th Cir. 1991) (holding that the exception applied to a decision not to display warning signs where there was evidence that the absence of signs was part of an overall policy decision to maintain a trail "in its wilderness state").

[25] See *O'Donnell*, 352 Ga. App. at 651.

[26] See *Kiehn*, 984 F2d at 1103 (II) (A).

[27] Compare *Hagan*, 321 Ga. App. at 477 (1) ("[The] decision [of the Georgia Department of Transportation ("GDOT")] to allocate its maintenance budget by prioritizing services based upon considerations such as safety and population is a basic governmental policy decision[.] It follows that GDOT's specific decision to forego

11

considerations were not memorialized in the e-mail chain does not mean that DNR

staff did not weigh them.

Having found the first step established, we turn to the second step and hold that

the challenged discretionary acts are the kind that the discretionary function exception

were designed to shield.[28] This policy choice, driven as it was by historical and

aesthetic considerations, was based on a consideration of social, political, and

economic factors[29] and is "clearly [a] matter[ ] into which courts in general and judges

in particular are ill equipped to intrude."[30]

---

routine inspections, repairs, or maintenance of sidewalks within a state right-of-way as a result of prioritizing maintenance activities based on budgetary constraints would fall under the discretionary function exception."), with *Brown*, 267 Ga. at 7 (1) ("Where and whether to install traffic lights were design decisions. When to open the intersection, and whether to open it without traffic lights are operational decisions[.]").

[28] See *Ga. State Bd. of Pardons & Paroles v. Finch*, 269 Ga. App. 791, 794 (2) (605 SE2d 414) (2004) (holding that decisions which "necessarily require consideration of numerous factors and the exercise of deliberation and judgment [are] precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing.").

[29] See OCGA § 50-21-22 (2).

[30] *Shelton v. Iowa*, 644 NW2d 27, 30 (II) (Iowa 2002) ("The substances used in forming the trails, the placement of the trails, the omission of guards or handrails, placement or omission of warning signs, and trail maintenance, were all matters for park professionals.").

Because the discretionary function exception leaves immunity in place where, as here, state employees are called upon to make policy judgment calls based on social, political, or economic factors, the trial court did not err in granting DNR's motion to dismiss for lack of subject matter jurisdiction.

2. As noted above, at the same time the trial court granted DNR's motion to dismiss, it entered a separate order, granting summary judgment on the ground that DNR owed no duty of care under the RPA. In light of our conclusion in Division 1 that the trial court lacked subject matter jurisdiction because DNR is immune from suit, the court should not have ruled on the merits of the summary judgment motion.[31] Accordingly, we vacate the summary judgment order.

*Judgment affirmed in part and vacated in part. Barnes, P. J., and Land, J., concur.*

---

[31] See *Bray v. Watkins*, 317 Ga. 703, 704 (895 SE2d 282) (2023).